UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

**SHERRY L. WESTBERRY,**
    **Plaintiff,**

v.                                                              **Case No.  2:06-CV-406-FtM-JES-DNF**

**MICHAEL J. ASTRUE,[1]**
**Commissioner of Social Security,**
    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

The Plaintiff filed an application for a period of disability and disability insurance benefits on September 4, 2002. under Title 42 U.S.C. Sec. 405(g) of the Social Security Act alleging disability beginning January 1, 2002.[2] (Tr. 119-121). The claim was denied initially and upon reconsideration. On July 10, 2003, a hearing was held before Administrative Law Judge Michael S. Maram. On October 31, 2005, ALJ Maram issued his decision which denied the Plaintiff benefits. (Tr. 11-22). The Plaintiff filed a Request for Review of the hearing decision and the Appeals Council denied same on July 1, 2006, making the ALJ's decision the final decision of the Commissioner. [Tr. 7-9]. For the reasons set out herein, it is respectfully recommended that the decision be **AFFIRMED.**

---

[1]     Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Commissioner Jo Ann B. Barnhart as the defendant in this action. No further action need to be taken to continue this suit by the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

[2]     The Plaintiff previously filed an application for Supplemental Security Income payments on September 15, 1998 (protective filing date), alleging disability since March 1, 1996. The claim was denied initially on October 1, 1998. The Plaintiff did not appeal the initial determination in the time provided by law.

The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memoranda.

**I.   SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION AND STANDARD OF REVIEW.**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511. The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

On September 4, 2002, the Plaintiff filed her application for Disability Insurance Benefits and alleged disability beginning January 1, 2002. The Decision of ALJ Maram, dated October 31, 2005, denied the Plaintiff's claim for benefits. (Tr. 11-22). At Step 1, the ALJ found the Plaintiff has not engaged in substantial gainful activity since her alleged onset of disability. (Tr. 13). At Step 2, the ALJ found that the Plaintiff's diabetes mellitus (DM); fibromyalgia; urgency, frequency syndrome; and adjustment disorder with anxiety. These, impairments are determined to be severe within the meaning of the Regulations. [Tr. 15]. At Step 3, the ALJ found that during the period in question, the Plaintiff did not have an impairment or combination of impairments which met the criteria of any of the listed impairments described in Appendix 1, Subpart P, Regulation No. 4. The ALJ also did not

find Plaintiff's testimony fully credible regarding her limitations and that the Plaintiff has the residual functional capacity to perform a restricted range of light work. [Tr. 18] . At Step 4, the ALJ determined Plaintiff was unable to perform any of her past relevant work. The ALJ relied on a vocational expert[3] (VE) and the Medical-Vocational Guidelines as a framework in reaching his decision. [Tr. 11-22]. The ALJ determined the Plaintiff is a "younger individual between the ages of 45-49" (20 C.F.R. § 416.1563). Accordingly, the ALJ found the Plaintiff not disabled at step five of the sequential evaluation. 20 C.F.R. §§416.920(a)(4) and (g).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Walden v. Schweiker*, 672 F.2d 835, 838-9 (11th Cir. 1982).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356,

---

[3] The certified transcript in this record includes a hearing transcript dated August 16, 2004, involving a claimant who is not the Plaintiff. [Tr. 35-58]. These pages of the transcript are not relevant to the instant case. The Commissioner filed a supplemental transcript that has blank pages number 35-58 so that the transcript page cites are accurate.

1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II.  REVIEW OF FACTS

The Plaintiff was born on October 27, 1956, and was forty-eight (48) years old at the time of the Administrative Hearing. [Tr. 63-64]. The Plaintiff has a high school education and a year of community college and vocational computer classes. [Tr. 64, 134]. The Plaintiff's past work experience consists of being a school assistant to a tech specialist, a school secretary and a teacher's assistant. [Tr. 129]. The Plaintiff worked with computers "[i]nstalling networking in the school". [Tr. 129]. The Plaintiff "assisted the teachers with the students in lab". [Tr. 129]

The Plaintiff alleged an onset date of January 1, 2002. The Plaintiff testified that she worked in 2003 for a few weeks but had to stop because of her medical condition. The Plaintiff earned $887.40 in 2002 ($659.70 with the Lee County School Board and $227.70 at Dilliard's Inc., with no earnings posted for 2003 - 2005. According to the Regulations, an individual's monthly earnings over $780.– (or $9,360.00/year) for the year 2002 are considered presumptive substantial gainful activity. However, since the earnings are below that level, the ALJ determined the Plaintiff did not engage in any substantial gainful activity after her alleged onset date.

The Plaintiff was diagnosed with diabetes mellitus (DM) in 1997. [Tr. 161; 181].[4] The Plaintiff developed numbness of her hands and feet and pain in her legs. The Plaintiff reported balance problems. Three (3) years later (May 16, 2002), the Plaintiff was seen by neurologist Paul F. Driscoll, M.D., and he noted that the Plaintiff was using an insulin pump with excellent glycemic control. Dr. Driscoll diagnosed diabetic peripheral neuropathy and noted that her reflexes were "symmetrical but minimally diminished distally with mild vibratory loss in both feet". [Tr. 182]. The Plaintiff was reevaluated in October of 2002 and continued to have problems with peripheral neuropathic pain. [Tr. 178].

The Plaintiff was admitted to Lee Memorial Hospital on September 20, 2000 for "uncontrolled diabetes". The Plaintiff was also treated with antibiotics for pyelonephritis, vaginitis and mood disorder all which stabilized with treatment. The Plaintiff was discharged on September 22, 2000. [Tr. 157].

The Plaintiff returned to Dr. Driscoll on November 14, 2000 with a new complaint of low back pain which was traveling "down to her thighs and knees". [Tr. 175]. The Plaintiff's medications were adjusted and she was prescribed physical therapy. Dr. Driscoll was to review her MRI. [Tr. 176]. The Plaintiff followed up for her low back pain and complained of left-sided neck pain that migrated to her left shoulder. Dr. Driscoll's impression was "cervical radiculopathy without myelopathy. [Tr. 174]. A review of the MRI dated March 3, 2001, of the cervical spine revealed minimal degenerative bulging at C3-4 and C6-7 without stenosis.

---

[4] The relevant time period in this case is from January 1, 2002, to June 30, 2004, the date that her insured status expired. [Tr. 119, 123). Therefore, some of the medical evidence of record is not relevant because it either concerned the Plaintiff's condition prior to her alleged onset date or after her date insured. [Tr. 157-92, 196-203, 214-217, 241-42).

[Tr. 172]. The EMG testing was normal and Dr. Driscoll found no neurological basis for the Plaintiff's pain. [Tr. 169-171]. The Plaintiff was referred to Dr. Kagan for shoulder capsulitis and to Dr. Angel Petri for fibromyalgia. [Tr. 169].

The Plaintiff was treated by Dr. Petri, an endocrinology specialist from November 2000 through March 11, 2002. Dr. Pietri's notes document that the Plaintiff had complaints of night sweats, chest pressure and increasing anxiety. [Tr. 212-214]. The Plaintiff also had muscle and joint pain accompanied by bilateral leg edema. Dr. Pietri diagnosed the Plaintiff with diabetic neuropathy, fibromyalgia, depression and increased anxiety. [Tr. 204-208, 215].

The Plaintiff consulted with Dr. William Evans a urology specialist on October 9, 2000. The Plaintiff was having recurrent urinary tract infections, occurring 5-6 time a year. Dr. Evan determined that the Plaintiff should have a full work-up "[t]o include an IVP with nonionic contrast" [Tr. 191-192] On October 16, 2000, the Plaintiff underwent an IVP and a voiding cystourethrogram. A review of the films revealed "[b]ilateral hydronephrosis with moderate calyectasis on both sides. The ureters appear to be fairly normal in caliber. The cystogram shows no reflux. This raises the question as to a possible partial bilateral UPJ obstruction. I doubt that this would be related to her diabetes". Dr. Evans concluded this could be a congenital situation. A Lasix washout renal scan was suggested and the Plaintiff was to return to Dr. Evans when said scan was completed. [Tr 190].

The Plaintiff was in a motor vehicle accident on April 2001. After the accident the Plaintiff was seen by Dr. Mark Means, a chiropractic physician, for headaches, back stiffness and soreness. [Tr. 183, 196]. In a "To Whom It May Concern" letter dated March 4, 2002,

Dr. Means states that he examined the Plaintiff on May 8, 2001, regarding the accident that occurred on or about April 28, 2001. The Plaintiff was hit from behind by another vehicle. Following the accident the Plaintiff did go to the hospital, was examined and had an x-ray examination. The Plaintiff was sent home with medications. The Plaintiff's history and examination findings revealed that "she had sustained a cervical sprain/strain complex resulting in a subluxation of the first cervical vertebra causing cervicalgia and cephalgia as well as an intervertebral disc syndrome and cervical brachial syndrome and also had sustained a lumbar sprain/strain complex causing an intervertebral disc syndrome and lumbalgia. Dr. Means felt that the Plaintiff had sustained permanent injuries. Dr. Means also wrote that he had not seen the Plaintiff since August of 2001 and was "unaware as to her exact present condition". Dr Means would have had to seen the Plaintiff again to make a determination regarding an "exact percentage of impairment ...". [Tr. 196-202]

The Plaintiff was seen in the Emergency Room of Lee Memorial Hospital on July 8, 2002 and on July 28, 2002. On the first occasion the Plaintiff complained of recurrent muscle pain in her left shoulder and neck. The Plaintiff denied any fever, chills or numbness. Dr. Roger A. Howell, DO, prescribed Vicodin and she was directed to see her primary physician or Dr. Driscoll. "[D]iagnosis: Fibromyalgia." {Tr. 218-219]. On the next occasion the Plaintiff complained of back pain. The Plaintiff was advised to have x-rays taken. The Plaintiff stated she did not want x-rays and would follow-up with her chiropractor. The Plaintiff was injected with Toradol and prescribed 12 Ultram tablets. The Plaintiff was advised she remain on strict bed rest for at least three days. "[A]ssessment: Acute exacerbation of chronic back pain."

The Plaintiff was seen by Dr. Peter Schreiber, a pain management specialist, due to chronic symptoms of headaches, neck and shoulder pain and upper back pain from June 1, 2001 through December 31, 2002. [Tr. 234-342]. The Plaintiff was treated with the following medications: "[V]icodin as needed for pain; Ambien for insomnia and Zanaflex for any myospasms". The Plaintiff received trigger point injections (Medrol, Sarapin and Marcaine) and was advised to continue with an exercise program. [Tr. 234].

At the request of the Social Security Administration, the Plaintiff was evaluated by Dr. Gail Vincent, a psychologist on December 15, 2002. Dr. Vincent found the Plaintiff to be cooperative, she had no indication of hallucinations, illusions or any formal thought disorder. Her mood and affect were even. The Plaintiff's attention, memory and concentration was one standard below the mean (16th percentile) indicating some problems in attention, concentration and auditory memory. The Plaintiff had both good judgment and insight. "[D]iagnostic Impression: AXIS I: Adjustment Disorder with Anxiety, AXIS II: Deferred; AXIS III: Diabetes, Chronic pain subsequent to MVA (4/01); Fibromyalgia; Urological Problems". [Tr. 230-233].

The Plaintiff was admitted to the intensive care unit of Lee Memorial Hospital on January 29, 2003, with ketoacidosis, chronic low back pain, hypertension and continuous pump therapy discontinued. The Plaintiff responded well to IV fluids and was released on January 31, 2003, in stable condition with instructions to follow-up with endocrinology, and an IMA within two weeks. [Tr. 267-268; 300-301].

The Plaintiff was seen by Dr. Bohm on March 17, 2003. Dr. Bohm indicated in his notes that the Plaintiff had not been to see him "[fo]r some time now". The Plaintiff was diagnosed with diabetes mellitus and allergies. The Plaintiff was found to be in a good health and was to return to see Dr. Bohm in three months. [Tr. 267-268].

The Plaintiff treated with Dr. E. W. Williams, from approximately April 2003 to April 2006. The Plaintiff was seen for her diabetes, fibromyalgia, myositis, lumbar spine strain, neuralgia, cephalgia, anxiety and depression. The Plaintiff was on numerous medications throughout that time, to-wit: "[L]exapro, Soma and Hydrocodone". [Tr. 304-352, 356-360]. The Plaintiff was then seen from April through July of 2003 with myositis. The myositis was found in the trapezius, thoracic and left shoulder. [Tr. 346]. The Plaintiff was assessed with fibromyalgia and received treatment with medication as well as trigger point injections. [Tr. 77]. From September through November 2003, the assessment continued to be myositis, trapezius, plus migraine headaches. [Tr. 355-340]. Visits throughout 2004 revealed complaints and assessments consistent with fibromyalgia, myositis, left lumbar strain, neuralgia, left upper back myositis, as well as depression. [Tr. 304-332]. The Plaintiff tried Prozac, Effexor and Zoloft at various times to treat her depression. [Tr. 78].

On April 18, 2005, Dr. Williams completed a Physical Capacity Evaluation form in which he limited the Plaintiff to less than a full range of sedentary work. [Tr. 354-55]. Dr. Williams limited the Plaintiff to no repetitive use of her left hand for grasping and fine manipulation. Further, "[n]o vocationally relevant amount of weight be lifted; minimum standing and/or walking for two hours in an eight-hour workday; and sitting no more than one hour in an eight-hour workday; and no repetitive feet movements". [Tr. 154, 155].

**III. SPECIFIC ISSUES AND CONCLUSIONS OF LAW:**

    **A.    THE COMMISSIONER'S RESIDUAL FUNCTION CAPACITY "RFC" DETERMINATION IS CONTRARY TO THE MEDICAL EVIDENCE OF RECORD**

Plaintiff asserts the Administrative Law Judge erred in finding Plaintiff's impairments were not severe and she was not disabled. Plaintiff asserts the ALJ also rejected the opinion of Dr. Williams, her treating physician and erred by relying on the treatment records from Dr. Bohm.

The record shows that the Plaintiff treated with Dr. Bohm for approximately nine years. [Tr. 74]. Dr. Bohm's record is very detailed. On July 8, 2002, while in the emergency room for treatment for body aches, the Plaintiff denied she was having any numbness or tingling to her extremities. On July 28, 2002, the Plaintiff complained of back pain and yet the examination indicated that she had general range of motion of all four extremities without pain or resistance. Also, there was no swelling, deformity or evidence of lumbar muscle spasms. When Dr. Bohm admitted the Plaintiff into the hospital in January of 2003 for the treatment of her diabetic ketoacidosis. [Tr.257], the Plaintiff had discontinued use of her glucose pump (due to a malfunction with the pump) which resulted in her decompensation. [Tr. 259-260]. On March 17, 2003, the Plaintiff reported that she worked in shrimping with her[5] husband. [Tr. 267]. The record shows the Plaintiff's state of health had been good. The Plaintiff had normal sensory and reflex examination. [Tr. 268].

---

[5]    It is noted that the relevant time period for the Plaintiff is from January 1, 2002, the Plaintiff's alleged onset date to June 30, 2004, the date her insured status expired. [Tr. 123. Not all of the medical evidence of record is relevant because it was either before the Plaintiff's alleged date or after her date last insured.

On April 18, 2005, (after the time period at issue), Dr. Williams opined that the Plaintiff could essentially perform no work activity. [Tr. 354-55]. The ALJ addressed Dr. Williams' opinion in detail and concluded, "[A]lthough Dr. Williams had a treating relationship with [Plaintiff], his opinion is without substantial support from the other evidence in the record and it appears that he apparently relied quite heavily on the subjective report of symptoms and limitations provided by [Plaintiff]'..." [Tr. 16]. The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *Sabo v. Commissioner of Social Security*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527 (d). (ALJ properly discounted the treating physicians' report where the physician was unsure of the accuracy of his findings and statements).

The ALJ determined that Dr. Williams' assessment was not supported by his office records and findings on physical examination. Dr. Williams' records reveal few objective findings and there are no physical exam notes. Many of the Plaintiff's visits to Dr. Williams were for conditions unrelated to her disability claim. [Tr. 338, 352]. The "Reason for Visit" portion of the examination form was very seldom even completed. [Tr. 320-52]. The Plaintiff failed to show that evidence from Dr. Williams or any other medical source after June 30, 2004, was in any way relevant to the issue of her ability to work prior to the expiration of her insured status.

### B. THE ALJ FAILED TO APPLY THE PROPER STANDARD FOR THE EVALUATION OF PAIN AND CREDIBILITY

The plaintiff contends that the ALJ erred in evaluating her subjective complaints of symptoms, including pain and her credibility..

When a claimant alleges disability through subjectively reported symptoms, there must be medical signs and laboratory findings that show the existence of a medical impairment that could reasonably be expected to produce the pain alleged. 20 C.F.R. 404.1529(a), 416.929(a); *Wilson* 284 F.3d at 1225 (factual findings conclusive if supported by substantial evidence). This inquiry requires a claimant to produce objective evidence of a medically determinable condition that reasonably could be expected to cause the pain alleged. 42 U.S.C. 423(d)(5)(A); 20 C.F.R. 404.1529(b), 416.929(b). A claimant's statement that she is experiencing pain or other symptoms will not, taken alone, establish that she is disabled. 20 C.F.R. 404.1529(a) 416.929(a) *McCoy o/b/o McCoy v. Chater*, 81 F. 3d 44, 47 (6th Cir. 1995).

The ALJ found that the plaintiff had medically determinable diabetes mellitus,; fibromyalgia, urgency, frequency syndrome; and an adjustment disorder with anxiety. . [Tr. 21, Finding 3]. The ALJ is then required to analyze the intensity and persistence of the claimant's symptoms. 42 U.S.C. 423(d)(5)(A). The ALJ is charged with determining the actual level of symptoms or pain the claimant specifically possesses, and determine credibility. The ALJ considers the medical evidence from the treating and examining physicians and considers information received from the claimant regarding daily activities, the frequency and intensity of the pain alleged, medications taken and inconsistencies in the claimant's

statements. 20 C.F.R. 404.1529(c)(2)-(4), 416.929(c)(2)-(4). After considering a claimant's complaints of pain, an ALJ "may reject them as not creditable." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).

The record shows the plaintiff has a long history of various complaints but the ALJ found these were not entirely credible and her allegations were outweighed by the evidence of record. [Tr. 121]. The ALJ determined the Plaintiff had conservative treatment, objective medication findings and her activities of daily living discredited her complaints of completely disabling pain.

On December 5, 2002, the Plaintiff advised Dr. Gail Vincent, the consulting psychologist that she helped her children prepare for school, that she drove them to school, bathed and dressed herself, cleaned the house, washed dishes, and made beds. The Plaintiff would read or rest for approximately one and half hours during the day and then return to the school to pick the children up. The Plaintiff advised she assisted the children with their homework, prepared supper and then watched television until time for bed at 10:00 p.m. [Tr. 283]. The ALJ found the Plaintiff's statements regarding her symptoms and limitations not credible.

Additionally, the Plaintiff was treated conservatively with pain medications and injections which provided good relief. [Tr. 77, 234, 236]. As previously discussed, Dr. Bohm described the plaintiff as having "period of compliance and non-compliance". [Tr. 300].

The burden of proving disability rests with the Plaintiff. 20 C.F.R. §936 F.2d 1215, 1218 (11th Cir. 1991). The Commissioner is charged with the duty to weigh the evidence,

resolve material conflicts in testimony, and determine the case accordingly. *Wheeler v. Heckler,* 784 F.2d 1073, 1075 (11th Cir. 1986); *Watson v. Heckler*, 783 F.2d 1169, 1172 (11th Cir. 1984).

## IV.   CONCLUSION

For the foregoing reasons, the ALJ's decision is consistent with the requirements of law and supported by substantial evidence. It is recommended that a judgment should be entered pursuant to sentence four of 42 U.S.C. §405(g) **AFFIRMING** the decision of the Commissioner.

**Respectfully recommended** at Ft. Myers, Florida, this 18th day of February 2008.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attaching the factual findings on appeal and a *de novo* determination by a district judge. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72; *see also* Fed.R.Civ.P. 6; M.D. Fla. R. 4.20.

Copies furnished to:

Honorable John E. Steele,
United States District Judge

    Counsel of Record